# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT IUFFUES WEBB II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15 C 11298 |
| | ) |
| JAMES SINNOTT, WILLIAM BUSSE, | ) |
| and CITY OF JOLIET, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On June 26, 2014, two officers of the Joliet Police Department, James Sinnott and William Busse, arrested Robert Iuffues Webb II on several charges, including obstructing the officers in the course of duty, a crime under Illinois law. The charge was terminated through a *nolle prosequi*. Webb alleges the officers and the City of Joliet violated his rights in connection with the arrest and engaged in malicious prosecution.

Webb has filed a motion for judgment on the pleadings under Rule 12(c). The defendants have moved for summary judgment. The Court denies Webb's motion and partially grants and partially denies the defendants' motion.

### Background

Three events are central to Webb's claims: an initial interaction on the street between Webb and the officers, a subsequent encounter at Webb's house, and the events in the courthouse leading to the entry of a *nolle prosequi* on Webb's charge.

## I. Initial interaction

The parties disagree about what prompted the initial encounter between Webb and the officers. Webb, who is African-American, claims that the officers stopped him because of his race and his history of activism on behalf of African-American residents. Sinnott and Busse argue that they approached Webb during their patrol of his neighborhood because of his unusual appearance.

Webb concedes that the officers found him standing without shoes on a public sidewalk while wearing torn and dirty clothing. The defendants claim they encountered him staring into the sky. Webb says he was surveying the area after leading a neighborhood clean-up.

The officers approached Webb in their squad car. After Webb refused to answer the officers' questions, one of the officers exited the car to ask him his name and learn if he was alright. Webb refused to answer. Webb claims that Sinnott, while still asking him for his name or other identification, placed his hands inside Webb's front and back pockets. Sinnott denies this occurred.

Webb then asked the officers why they were conducting what he believed to be a *Terry* stop. The officers told Webb that they were performing a "wellness check," not a *Terry* stop. Sinnott and Busse then approached a neighbor to try to learn more about Webb.

## II. Subsequent encounter at the house

While the officers spoke with Webb's neighbors, Webb remained at the location of his original interaction with the officers. One neighbor provided the officers with Webb's address, which was near the location of the original interaction. The officers

2

claim they wanted Webb's address to find someone who could confirm his identity and that he did not need aid. Once the officers learned Webb's address and began to approach his house, Webb started to run to the house.

A sidewalk runs along the front of Webb's home, and a path leads from the sidewalk to the front door of the house. Webb intercepted the officers at the junction of the sidewalk and the path and told them that they could not access his property without trespassing. As Webb describes, "I . . . posted myself in front of defendants Sinnott and Busse . . . to block his movement onto the premises[.]" Compl. ¶ 27. Though the details differ, both parties agree that Sinnott attempted to approach Webb's front door, but he and Webb made contact on the path. They again made contact on or near the steps leading to Webb's door. Sinnott and Busse then arrested Webb for obstructing an officer.

Webb says that after he was placed in the officers' squad car, Sinnott went into his house and walked around indoors for approximately ten minutes, coming out at one point to tell Busse "you ought to see this." Webb Dep. at 69. Sinnott says he only tried to find another party at the residence; he denies entering Webb's house. The officers eventually brought Webb to the police station for processing.

**III.     Prosecution**

Although Webb was initially charged with several crimes, the only charge remaining at the time of his scheduled January 2015 trial was for obstructing an officer. Webb appeared at the courthouse and saw both officers outside the courtroom in the morning. The prosecutor, Charlene Recio, told the officers that Webb's case would not be heard in the morning. Webb claims that Recio asked them to return at 1:00 p.m.

3

Sinnott disagrees with this account. He contends that the prosecutor told him she would call him when it was time for trial to begin. When the judge called Webb's case, however, neither officer was present. The judge then re-scheduled Webb's case for later in the afternoon. When the case was called a second time, neither officer was present. The prosecutor then entered a *nolle prosequi*, and Webb's case was dismissed. The officers contend they were attempting in good faith to return but did not have sufficient time to travel to the courthouse.

In December 2015, Webb filed suit against Sinnott and Busse and the City of Joliet. His complaint includes thirteen claims. Counts 1 through 5 are claims under 42 U.S.C. § 1983 in which Webb alleges violations of the Fourth Amendment for, respectively, (1) the initial stop and search, (2) excessive use of force, (3) false arrest, (4) false police reporting, and (5) false imprisonment. In Count 6, Webb alleges a violation of the Fourteenth Amendment's Equal Protection Clause. Count 7 is a claim under 42 U.S.C. § 1981(a) in which Webb alleges the officers denied him the full and equal benefit of all laws due to his race. Count 8 is a claim under 42 U.S.C. § 1985(3) in which Webb alleges a conspiracy to interfere with his civil rights. In Counts 9 through 11, Webb alleges violations of the Illinois Constitution. Count 12 is a state-law malicious prosecution claim. Count 13 is a section 1983 claim in which Webb alleges that the City of Joliet is liable for its failure to train officers and for a policy or practice of discrimination. The Court notes that although Webb appears to allege in the body of his complaint that Sinnott's entry into and search of his home was improper, *see* Compl. ¶ 33, there is no count in the complaint asserting a Fourth Amendment claim based on that entry and search.

Webb has moved for judgment on the pleadings for Counts 6, 8, 9, and 12. The defendants have moved for summary judgment on all of Webb's claims except for Counts 2 and 4.

**Discussion**

Webb has moved for judgment on the pleadings. Rule 12(c) permits judgment on the pleadings if the moving party "demonstrate[s] that there are no material issues of fact to be resolved." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The Court may only consider the pleadings, including the complaint, answer, and attached exhibits. *Id.* "Although not typical, a plaintiff may bring a motion under this Rule." *Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160, 172 (E.D. Mich. 2006).

Webb argues in his motion the Court should find that the defendants should be deemed to have admitted paragraphs 56-64, 66, and 73-75 of his complaint. He contends that the defendants should have conducted interviews and compiled materials rather than claim inadequate information in their answers to these paragraphs. As the defendants note, Webb raised this argument in an earlier motion to strike. *See* dkt. no. 14. The Court declines to deem these allegations as admitted for the same reasons it cited in overruling Webb's argument during the June 15, 2016 status hearing in this case.

The defendants have moved for summary judgment. A party is entitled to summary judgment if the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine dispute if "no reasonable jury could find in favor of the non-

moving party." *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012). To decide a motion for summary judgment, the court may consider the pleadings and evidence in the record. *Id.*

Local Rule 56.1 provides a set of requirements for non-movants responding to a motion for summary judgment. The defendants argue that Webb's Local Rule 56.1 statement violates this rule in several respects. Though it is true that Webb's statement does not meet the strict requirements of the rule, courts should be "solicitous" of *pro se* litigants facing a motion for summary judgment. *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011). The Court notes the issues with Webb's Local Rule 56.1 statement but declines to treat the defendants' factual allegations as admitted. It is reasonably clear from Webb's submission what is actually and legitimately disputed.

In the discussion of each party's motion that follows, where several counts may be addressed through the same analysis, the Court considers these counts together.

**I.  Count 1**

The defendants have moved for summary judgment on Count 1, in which Webb alleges that the officers' initial encounter with him and the search of his pockets violated the Fourth Amendment. In seeking summary judgment, the defendants claim the officers are entitled to qualified immunity because they reasonably believed they were acting under the community caretaking exception as recognized by Illinois decisional law.

Qualified immunity shields a government official from liability for damages for discretionary acts taken in his or her official role if the actions do not violate clearly

6

established rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A clearly established right is one that is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Volkman v. Ryker*, 736 F.3d 1084, 1089-90 (7th Cir. 2013). The Seventh Circuit has held that in determining whether a right is clearly established, a court may look not just at federal decisional law but also applicable state court decisions. *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 573 (7th Cir. 2014) (state law is "relevant as to what the defendants might have thought the law, including the federal constitution, permitted them to do"). In *Sutterfield*, the Seventh Circuit concluded that the defendant police officers were entitled to qualified immunity because they reasonably believed they were engaged in a community caretaking function authorized by Wisconsin law. *Id.* at 572-73.

The question before the Court is whether a reasonable officer could understand the search of Webb to be authorized under the community caretaking doctrine recognized by Illinois law.[1] If so, the officers are entitled to qualified immunity.

In *People v. Slaymaker*, 2015 IL App (2d) 130528, the court cited "two general criteria" to determine whether the community caretaking doctrine applies to a particular search or seizure: (1) whether the officer was doing something other than investigating a crime and (2) whether the act was reasonably taken to protect the safety of the public. *Id.* ¶ 16 (quoting *People v. McDonough*, 239 Ill. 2d 260, 272, 940 N.E.2d 1100, 1109 (2010)). The court described the second criterion as a balancing test, in which "a

---

[1] The Seventh Circuit appears to have limited the community caretaking doctrine to automobile searches. *See United States v. Pichany*, 687 F.2d 204, 209 (7th Cir. 1982). Other circuits are divided on the application of the community caretaker exception to the warrant requirement outside the automobile context. *See Sutterfield*, 751 F.3d at 556 (collecting cases).

7

citizen's interest in going about his or her business free from police interference" is weighed against "the public's interest in having police officers perform services in addition to strictly law enforcement." *Id.*

In *Slaymaker*, the court listed "helping children find their parents" and "responding to calls about missing persons" as examples of non-law enforcement services protected by the doctrine. *Id.* ¶ 15. Illinois courts have applied the doctrine to approve of the stop of an individual walking near a busy highway to see if he needed assistance, *id.* ¶ 17, the stop of an individual to check on his wellbeing after he drunkenly fell out a tree while covered in mud, *People v. Queen*, 369 Ill. App. 3d 211, 219, 859 N.E.2d 1077, 1084 (2006), and the search of an individual before he received a courtesy ride in a police car. *People v. Stoltz*, 2012 IL App (4th) 110682-U, ¶¶ 4, 25.

The evidence, taken in the light most favorable to Webb, shows that the officers found Webb standing on a public sidewalk, without any shoes, in dirty and tattered clothing. Sinnott Decl. ¶¶ 5-7; Webb Dep. at 27; Compl. ¶ 11. Sinnott states that he found "a man with a disheveled and disoriented appearance . . . His clothes were dirty and tattered." Sinnott Decl. ¶ 6. Webb acknowledges that he was wearing white pants with "some holes because they were shredded" and that they had become dirty. Webb Dep. at 26-27. As Webb describes, he refused to provide his name or other identification. Sinnott continued to ask him for identification while checking his pockets. Compl. ¶ 18 ("[D]efendant Sinnott, while continuing to have his hands searching around inside of the front and back pockets of my pants he asked me, 'What is your name?' 'Where do you live?'"). Nothing in the record would permit a reasonable inference that the officers were pursuing a law enforcement function. There is no evidence, for

8

example, that the officers asked Webb whether he had any weapons or contraband.

Though the precise contours of the community caretaking exception are unclear, a reasonable officer could conclude that the search of Webb was permitted by the exemption as the Illinois courts have construed it. As a result, the search of Webb did not violate his "clearly established rights," and the defendants are entitled to summary judgment. *Volkman*, 736 F.3d at 1089-90.

The Court emphasizes that this holding is limited to the search of Webb's person. As noted earlier, none of the counts in Webb's complaint challenge the search of his home under the Fourth Amendment. For this reason, nothing in this decision should be read as suggesting a ruling regarding the legality of the alleged entry into or search of Webb's home.

**II.    Count 2 and 4**

Neither side's motion addresses Count 2 or 4 of Webb's complaint. In Count 2, Webb alleges that Sinnott and Busse used excessive force against him in violation of the Fourth Amendment. In Count 4, Webb claims that Sinnott and Busse prepared an incident report that falsely alleged Webb committed additional crimes.

**III.    Count 3 and 5**

The defendants have moved for summary judgment on Counts 3 and 5. In Count 3, Webb alleges the officers violated the Fourth Amendment by falsely arresting him. In Count 5, he alleges they violated the Fourth Amendment by falsely imprisoning him. The defendants first argue that they had probable cause to arrest Webb, which, if true, would defeat both claims. *Abbott v. Sangamon Cty.*, 705 F.3d 706, 713-14 (7th Cir. 2013). The Court does not address this argument, as it agrees with the defendants on

9

their second argument: the officers are entitled to qualified immunity.

As discussed earlier, qualified immunity shields officers from damages for discretionary actions that do not violate the "clearly established" rights of another. *Harlow*, 457 U.S. at 818; *Volkman*, 736 F.3d at 1089-90. To prevail on qualified immunity with regard to Counts 3 and 5, the officers must establish that a reasonable officer would not have believed that he violated Webb's rights in arresting and imprisoning him. State and federal law are both relevant to the beliefs of a reasonable officer regarding what the law permits him or her to do. *Sutterfield*, 751 F.3d at 573.

An officer possesses probable cause to arrest and imprison an individual if "the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott*, 705 F.3d at 714. Webb was arrested for obstruction of an officer. A person may be liable for obstructing an officer if he or she "knowingly resists or obstructs the performance of [an officer] of any authorized act within his or her official capacity." 720 ILCS 5/31-1. For purposes of qualified immunity, the question is whether the officers had what is sometimes called "arguable probable cause," *Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014), to arrest Webb for this offense. Arguable probable cause exists when a reasonable officer in the same circumstances and possessing the same knowledge as the defendant officer reasonably could have believed that probable cause existed. *Id.*

As Webb himself states in his complaint, he intercepted the police officers at the threshold between the sidewalk and the pathway to his front door. He "posted" himself to "block" Sinnott from stepping onto his property. Compl. ¶ 27. Though his deposition

differs at points from his complaint, Webb still describes positioning himself in between the officers twice in their walk towards his front door. Webb Dep. at 56-57; Sinnott Decl. ¶¶ 13-16. A reasonable officer, under these circumstances, reasonably could believe that Webb had obstructed the officers.

Next, a reasonable officer could also reasonably believe that Sinnott was engaged in an "authorized act" when Webb obstructed him, an element of the offense of obstruction of a police officer under 720 ILCS 5/31-1. An officer could reasonably believe, given the condition in which the officers found Webb, that he was authorized under the community caretaking doctrine to approach Webb's home to determine if there was someone there to ask about his identity and condition.[2] It is undisputed that Webb was found standing near a roadway in his socks and in torn and dirty clothing; he refused to identify himself to officers; and he grew increasingly agitated during their interaction. A reasonable officer, considering these facts, would conclude that approaching Webb's home to learn more about his identity and his condition was a reasonable effort to protect public safety and thus an "authorized act" under the community caretaking doctrine. *Slaymaker*, 2015 IL App (2d) 130528 ¶ 16.

Because a reasonable officer reasonably could believe that Webb had (1) obstructed the officers from (2) carrying out an authorized act, he reasonably could conclude that there was probable cause to arrest Webb. The defendants are therefore entitled to summary judgment on Counts 3 and 5 based on qualified immunity.

---

[2] The Court need not and does not decide here whether Sinnott was engaged in an authorized act when he allegedly entered and searched Webb's home. As indicated earlier, Webb's complaint includes no count challenging the alleged entry into or search of his home under the Fourth Amendment.

**IV.     Count 6, 7, and 8**

On Counts 6, 7, and 8, the defendants have moved for summary judgment. Webb has moved for judgment on the pleadings for Counts 6 and 8. In Count 6, Webb asserts a section 1983 claim in which he alleges that the officers deprived him of the equal protection of the law on the basis of his political activity and race. He alleges in Count 7 that the officers violated his right to the full and equal benefit of all laws under section 1981 on account of his race. In Count 8, Webb claims that the officers conspired to deprive him of his civil rights under section 1985(3), also because of his race.

With regard to Count 6, Webb fails to point to evidence from which a reasonable jury could find that the officers were motivated by his political activities. To prevail on a section 1983 claim of this sort, a plaintiff must show (1) he is similarly situated to members of the unprotected class, (2) he was treated differently from those members, and (3) the defendants acted with discriminatory intent. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). In his deposition, Webb states that he had gained notoriety for his testimony before the Joliet City Council on police misconduct. Webb Dep. at 114-15. Without more—and in this case there is no more—this evidence is insufficient to permit a reasonable jury to find that the officers acted for this reason, let alone that that Webb was treated differently in his arrest from others who had not engaged in similar political activity.

Likewise, in Counts 6 through 8, Webb fails to show sufficient facts to permit a reasonable jury to find that the officers engaged in racial discrimination. Insofar as Webb alleges he was deprived of equal protection because of his race in Count 6, he

must provide evidence from which a reasonable jury could find a racially discriminatory intent behind his arrest. *DeWalt*, 224 F.3d at 618. Similarly, Webb must provide evidence from which a reasonable jury could find that he was discriminated against based on his race in order to survive summary judgment on his section 1981 claim in Count 7. *Copeland v. Northwestern Mem. Hosp.*, 964 F. Supp. 1225, 1237 (N.D. Ill. 1997) (a plaintiff bringing a section 1981 claim must present facts "that indicate that . . . the defendants took . . . their actions because of [the plaintiff's] race"). He must make the same showing for his section 1985(3) claim in Count 8. *Stevens v. Tillman*, 855 F.2d 394, 404 (7th Cir. 1988) (holding that section 1985(3) only addresses racially-motivated conduct). Because Webb has pointed to no evidence from which a reasonable jury could find a racial motivation behind his arrest, the Court grants summary judgment in favor of defendants on Counts 6, 7, and 8.

The Court denies Webb's motion for judgment on the pleadings on Counts 6 and 8. As just discussed, Webb has not provided sufficient evidence through his pleadings to "demonstrate that there are no material issues of fact to be resolved" and that he is entitled to judgment. *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452. *See* Am. Answer at ¶ 108-09, 114-16 (denying factual allegations material to Counts 6 and 8).

**V.     Count 9, 10, and 11**

Webb has moved for judgment on the pleadings on Count 9 and the defendants have moved for summary judgment on Counts 9, 10, and 11, which are claims based on the Illinois Constitution. In Count 9, Webb alleges the officers violated his right to equal protection. In Count 10, Webb alleges that the search of his person violated his right to be free from unreasonable search. In Count 11, he alleges the search of his house also

13

violated his right to be free from unreasonable search. The defendants argue that each of these claims is time-barred by the one-year statute of limitations on claims against local entities and their employees. 745 ILCS 10/8-101(a).

The general rule in Illinois is that the statute of limitations begins to run at the time that the injury occurs. *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 169, 421 N.E.2d 864, 868 (1981). The injuries underlying Counts 9, 10, and 11 occurred on June 26, 2014, the date of Webb's arrest. Webb filed his complaint on December 16, 2015, more than one year later. For this reason, defendants are entitled to summary judgment on Counts 9, 10, and 11. The Court denies Webb's motion for judgment on the pleadings on Count 9 for the same reason.

## VI. Count 12

Webb has moved for judgment on the pleadings and the defendants have moved for summary judgment on Count 12, in which Webb alleges that the City of Joliet maliciously prosecuted him. The defendants argue that Webb cannot establish that the *nolle prosequi* in his case was a termination in his favor, a requirement of a malicious prosecution claim. To address this argument, the Court must confront two questions. First is whether the Court should consider the affidavit of Charlene Recio, the prosecutor who entered the *nolle prosequi* on the ground that Recio was not properly disclosed during discovery. The second question is whether a reasonable jury could find for Webb on his malicious prosecution claim.

### A. Recio affidavit

Webb argues that the Court should not admit Recio's affidavit because she was not properly disclosed as a witness under Rule 26(a). Webb's case is not one of the

14

types of proceedings that Rule 26 exempts from initial disclosure requirements. Fed. R. Civ. P. 26(a)(1)(B). And it is undisputed that defendants did not identify Recio as a person they might use as a witness. Thus the Court addresses this issue under Rule 37(c), which permits the use of an undisclosed witness only if the failure to disclose is harmless or substantially justified.

In *David v. Caterpillar, Inc.*, 324 F.3d 851 (7th Cir. 2003), the Seventh Circuit provided four factors to determine whether non-disclosure was harmless or substantially justified. *Id.* at 857. The first, the existence of prejudice to the party not offering the evidence, would seem at first blush to favor exclusion. *Id.* By revealing an affidavit on the day that the summary judgment motion was filed, the defendants gave Webb minimal time to review the evidence. *See Rowe Int'l Corp. v. Ecast, Inc.*, 586 F. Supp. 2d 924, 935 (N.D. Ill. Aug. 25, 2008) (Kennelly, J.) (noting that discovery deadlines are crafted with an eye to summary judgment motions). But as defendants argue, Webb took no depositions, even of the named defendants, so it is highly unlikely that he would have attempted to take Recio's deposition even if she had been properly and in timely fashion. This tempers the degree of prejudice, as it suggests that Webb is no worse off than he would have been if defendants had disclosed Recio earlier.

The second factor, the ability of the prejudiced party to cure the prejudice, *David*, 324 F.3d at 857, likewise would appear to favor exclusion, as discovery was already closed when defendants first disclosed Recio. But again, there is no good reason to believe that Webb would have taken Recio's deposition had she been disclosed earlier. Thus this factor does not tip the balance in favor of exclusion of the affidavit.

The third factor, the likelihood of disruption of trial, *id.*, favors admission, as no date for trial has yet been set.

The fourth factor, the presence of bad faith in failing to disclose the information, *id.*, also favors admission. The defendants argue that they listed another prosecutor, John Rickmon, in their disclosure list, because they genuinely believed he had been the prosecutor on the day in question. They note the docket for Webb's prosecution lists Rickmon, not Recio, as the prosecutor. Accordingly, they listed Rickmon as the potential witness. *See* dkt. no. 57, Defs.' Ex. A (exhibit showing a copy of the docket for Webb's prosecution). After learning that Recio was the appropriate prosecutor, the defendants secured her affidavit and provided it to Webb promptly. Defendants may have been less than diligent in learning this information, but there is no basis to believe they acted in bad faith. The Court concludes that defendants' untimely disclosure of Recio is harmless and therefore declines to preclude the use of her affidavit

### B. Malicious prosecution claim

The defendants contend that Webb cannot demonstrate that the *nolle prosequi* meets the favorable termination requirement of a malicious prosecution claim. *Swick v. Liautaud*, 169 Ill. 2d 504, 512, 662 N.E.3d 1238, 1242 (1996). In a case in which the prosecutor abandons a prosecution via a *nolle prosequi*, it is a favorable termination for the accused unless "the abandonment is for reasons not indicative of the innocence of the accused." *Id.* at 513, 662 N.E.2d at 1242-43.

The transcript of the state court proceedings makes clear reflects that Sinnott arrived at the courthouse in the morning but failed to appear for the afternoon trial, for which he would have been a key witness. State Trial Tr. at 5. The defendants argue

that Sinnott's failure to appear was a logistical mistake: after the prosecutor learned that the trial would not take place in the morning, she told him he could return home and she would call him when the trial was scheduled to begin. Sinnott Decl. ¶ 28. Sinnott claims he returned to court as soon as he received the prosecutor's telephone call but, by the time he had arrived, the judge had already called the case. *Id.* The affidavit of Charlene Recio, the prosecutor, supports this account. Recio Affid. at 1-5.

Webb disputes Sinnott's version of events. In his complaint, he claims that the officers were told to arrive back in court at 1:00 p.m. Compl. ¶ 71. As the trial record confirms, the judge called Webb's case around that time and the officers were not present, so the judge re-scheduled the case for later in the afternoon. State Trial Tr. at 3. When the case was called a second time that afternoon, the officers were still not present, the judge declined to continue the case again, and the prosecutor entered a *nolle prosequi*. *Id.* at 4-5. Though Sinnott suggests that the judge abruptly or unexpectedly brought up Webb's case, the judge's comments in the transcript suggest otherwise: "The matter was set for trial this morning. . . . I know we have been extraordinarily busy, but your officer did not arrive at 1:30 when I had set this matter. . . . I gave you the courtesy of saying, that's fine, Mr. Webb's trial can be second, and that was over an hour ago." *Id.* at 5.

A prosecution terminated by *nolle prosequi* is favorably terminated, unless "the abandonment is for reasons not indicative of the innocence of the accused." *Swick*, 169 Ill. 2d at 513, 662 N.E.2d at 1242-43. A *nolle prosequi* resulting from a law enforcement officer's failure to appear as a witness is not necessarily a reason that is not indicative of the defendant's innocence. *See Edwards v. Village of Park Forest*, No. 07 C 4910,

17

2009 WL 2588882, *6 (N.D. Ill. Aug. 20, 2009) (finding that a jury could infer that a *nolle prosequi* resulting from a testifying officer's failure to appear as a witness could indicate a lack of probable cause in the underlying case); *Mahaffey v. Misner*, No. 07 C 6758, 2009 WL 2392087, *3 (N.D. Ill. July 31, 2009) (finding that a *nolle prosequi* following the failure of a complaining witness to appear was a favorable termination); *Petrovic v. City of Chicago*, No. 06 C 6111, 2008 WL 4286954, *10 (N.D. Ill. Sept. 16, 2008) ("The failure of a complaining officer to appear may be a favorable termination for [the] purpose of [a] malicious prosecution claim."). Under the circumstances, a reasonable jury could find that Webb meets the favorable termination requirement. The Court therefore denies the defendants' motion for summary judgment.

The Court can also quickly address Webb's motion for judgment on the pleadings. Given that the defendants deny several of Webb's allegations relating to the trial, including the alleged instruction to the officers to return at 1:00 p.m., Am. Answer ¶ 71, Webb cannot "demonstrate that there are no material issues of fact to be resolved." *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452. The motion for judgment on the pleadings is denied.

### VII. Count 13

The defendants have moved for summary judgment on Count 13. In Count 13, Webb alleges that the City of Joliet is subject to liability under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690 (1978), in which the Supreme Court held that a municipality is liable under section 1983 only if "the action that is alleged to be unconstitutional implements or executes a policy statement . . . officially adopted and promulgated by that body's officers." Webb argues that the City is liable for (1) a failure

18

to train officers that reflects "deliberate indifference" to the rights of its citizens and (2) a policy or practice of discrimination held by the City. The defendants argue that Webb has failed to offer evidence establishing either theory.

The defendants are entitled to summary judgment on Count 13. Webb has offered no evidence regarding the City's training practices, nor has he linked any such practices to the constitutional violations he alleges. *See generally City of Canton v. Harris*, 489 U.S. 378, 388, 389 (1989). And he has offered no evidence supporting his contention that the City had a policy or widespread custom of discrimination. *See generally Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001). Though Webb claims there was a "strong possibility" that the Joliet Police Department had a custom of discrimination against him for his advocacy before the Joliet City Council, Webb Dep. at 157, this is speculative testimony unsupported by any evidence. Likewise, Webb alleges the involvement of a former Joliet mayor, *id.* at 127-29, but this falls far short of the sort of evidence needed to permit a reasonable jury to find that a person with final decision-making authority caused the alleged constitutional violations.

## Conclusion

For the foregoing reasons, the Court denies Webb's motion for judgment on the pleadings [dkt. no. 39]. The Court grants the defendants' motion for summary judgment on Counts 1, 3, 5-11, and 13, and denies it on Count 12. [dkt no. 43]. The Court sets the case for a status hearing on November 30, 2017 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 26, 2017